UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **16-10039**

18 U.S.C. § 1349
18 U.S.C. § 1344
18 U.S.C. § 1014
26 U.S.C. § 7212(a)
18 U.S.C. § 2
18 U.S.C. § 982(a)(2)(A)

UNITED STATES OF AMERICA

vs.

DAVID W. SCHWARZ,

        Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

1. From in or around November 2004, through in or around July 2008, Cay Clubs Resorts and Marinas and its affiliated entities (collectively "Cay Clubs") sold condominium units in purported luxury resorts in Florida and elsewhere, including in the Florida Keys. Defendant **DAVID W. SCHWARZ** was the Vice President and Chief Financial Officer of Cay Clubs and had authority over its use of funds.

2. Dave Clark was the President and Chief Executive Officer of Cay Clubs and resided in Tavernier, Florida.

3.  Cay Clubs was comprised of numerous entities and conducted business at 94500 Overseas Hwy., Key Largo, Florida, among other places. Dave Clark and **DAVID W. SCHWARZ** were the owners of Cay Clubs. Clark owned a two-thirds interest and **SCHWARZ** owned a one-third interest in Cay Clubs.

4.  Cay Clubs had numerous bank accounts that corresponded to its various entities. One of the Cay Clubs entities, Cristal Clear Management, LLC ("CCM"), was a Florida limited liability company with a bank account at Bank of America ("BofA") in Key Largo, ending in x2969. This account was used to fund most of the operations of Cay Clubs. **DAVID W. SCHWARZ** was listed as a Member/Manager and was a signatory of this account.

5.  JPMorgan Chase Bank, N.A. ("JP Morgan Chase") and Fifth Third Bank, N.A. ("Fifth Third") were financial institutions with offices in Florida and elsewhere, and whose accounts and deposits were insured by the Federal Deposit Insurance Corporation ("FDIC").

6.  The term "closing" referred to the legal event at which the transfer of an interest in real estate from seller to buyer formally took place, as well as the point at which funds were supposed to be transferred between the various parties, such as from the lending institution to the buyer or to the seller on the buyer's behalf.

7.  The term "mortgage" was used in the real estate industry to refer to a loan to finance the purchase of real estate, usually with specified payment periods and interest rates, in which the borrower/mortgagor gave the lender/mortgagee a lien on the property as collateral for the loan.

8.  A HUD-1 Settlement Statement ("HUD-1 Statement") was a standard form required to be executed for the closing of all real estate transactions. The HUD-1 Statement itemized all aspects of the closing for the lender, including any payments made by the borrower, money due to the seller, and any fees paid to third parties in connection with the closing.

9. "Cash to close" referred to the monetary obligations to be met by the buyer in order for a closing on a particular real estate transaction to be completed.

10. The term "straw buyer" referred to a borrower who, for a fee or other benefit, allowed their identity and credit to be used to obtain a mortgage loan.

11. The Internal Revenue Service ("IRS") was an agency of the U.S. Department of the Treasury responsible for enforcing and administering the tax laws of the United States.

12. IRS Form 1065 was an information return that was used to report income, gains, losses, deductions, and credits, for certain types of entities, including partnerships. A partnership did not pay tax on its income but "passed through" any profits or losses to its partners. Partners were required to include partnership items on their tax or information returns on Schedule K-1.

13. IRS Form W-2 was used to report wages, tips, and other compensation paid to an employee, as well as the employee's income and social security taxes withheld.

14. IRS Form 1099-MISC was used to report payments made in the course of a trade or business to a person who is not an employee or to an unincorporated business.

15. Beginning in November 2004 and continuing through at least June 2007, **DAVID W. SCHWARZ** caused a series of funds transfers to and from Cay Clubs accounts in Key Largo, Florida, and elsewhere, for the benefit of himself and Dave Clark.

## COUNT 1
**Conspiracy to Commit Bank Fraud**
**(18 U.S.C. § 1349)**

1. Paragraphs 1 through 15 of the General Allegations section of this Indictment are re-alleged and incorporated herein by reference.

2. Beginning in or around November 2004, and continuing until at least in or around May 2011, in Monroe County, in the Southern District of Florida, and elsewhere, the defendant,

3

**DAVID W. SCHWARZ,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with Dave Clark and others known and unknown to the Grand Jury to commit an offense against the United States, that is, to knowingly, and with the intent to defraud, execute and cause the execution of a scheme and artifice to obtain any of the moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, one or more financial institutions, including JP Morgan Chase and Fifth Third, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, in violation of Title 18, United States Code, Section 1344(2).

## PURPOSE OF THE CONSPIRACY

3. It was a purpose of the conspiracy for the defendant and his conspirators to unlawfully enrich themselves by misleading and defrauding lending institutions, by (a) using straw borrowers to purchase condominium units in investment properties; (b) submitting false and fraudulent loan applications and related documents to lending institutions, containing representations that the cash to close such loans was being provided by the borrower; (c) using the proceeds of these fraudulently obtained loans to operate the Cay Clubs business and make it appear that the business was engaged in legitimate condominium sales; (d) diverting fraud proceeds for their personal use and benefit, and to further the fraud scheme; and (e) concealing the receipt of fraud proceeds by the conspirators by not reporting these proceeds on relevant tax documents and not filing tax returns.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4

4. **DAVID W. SCHWARZ** and Dave Clark would operate numerous corporate entities using the name "Cay Clubs," and would create bank accounts for each entity. **SCHWARZ** and certain subordinates of Clark would be listed as signatories or account holders on bank accounts, and would keep Clark's name off of bank accounts.

5. In order to profit from the operation of Cay Clubs, make Cay Clubs appear to be successful to outsiders, and to pay the financial obligations of Cay Clubs, **DAVID W. SCHWARZ** and Dave Clark would orchestrate the sale of condominiums units that Cay Clubs controlled, to certain employees of Cay Clubs and family members of Clark.

6. Dave Clark would identify insiders and family members, such as Individual #1, Individual #2, Individual #3 and Individual #4, to act as straw borrowers for loans that were used to purchase or refinance condominium units. Clark and **DAVID W. SCHWARZ**, and persons acting at their direction, prepared and caused to be prepared false and fraudulent loan applications and related documents, which included false information related to cash to close that would be provided by the borrowers in order to secure the mortgage loan. The loan applications and associated paperwork would also include false claims of employment, wages, assets and liabilities for the named borrowers. These false and fraudulent loan applications and documents were submitted to financial institutions such as JP Morgan Chase and Fifth Third, and to other lenders, including Countrywide Home Loans, Inc.

7. Dave Clark and other conspirators prepared and caused to be prepared false and fraudulent loan applications and HUD-1 Statements which, among other things, falsely and fraudulently represented to the mortgage lenders that the straw borrowers had met their down payment and cash to close obligations, when, in fact, these payments were made by **DAVID W. SCHWARZ** and Clark using funds from Cay Clubs accounts. For many of the fraudulently

5

obtained loans, **SCHWARZ** would wire the cash to close funds from the CCM account directly to the closing agent.

8. To support certain of the false and fraudulent loan applications provided to lenders, persons acting at the direction of Dave Clark would execute false and fraudulent documents at the Cay Clubs offices in Key Largo, including (a) signing loan documents in the names of borrowers using false signatures; (b) affixing false notarizations to loan documents that contained false signatures, falsely attesting that the named borrowers signed and reviewed the loan documents; (c) submitting and executing false supporting documentation including false lease agreements; and (d) submitting false tax returns and pay stubs that contained false income information.

9. Based on the false and fraudulent loan applications and HUD-1 Statements, the proceeds of the fraudulently obtained mortgage loans were deposited into Cay Clubs accounts controlled by **DAVID W. SCHWARZ** and Dave Clark, including the CCM account. These funds were thereafter available for the personal use and benefit of **SCHWARZ** and Clark, and to further the fraud.

10. For loans obtained in the names of straw borrowers, the borrowers listed on the loan applications did not make the mortgage payments. Instead, for a period of time after the transactions closed, Dave Clark and **DAVID W. SCHWARZ** caused the monthly mortgage payments for these loans to be paid from accounts that were funded via the CCM account. Subsequently, the conspirators stopped making the payments and the mortgages went into foreclosure, resulting in substantial losses to the lenders.

11. During the scheme, **DAVID W. SCHWARZ** and Dave Clark agreed to distribute the proceeds from the operation of Cay Clubs among themselves, with two-thirds of all proceeds paid to Clark and one-third of all proceeds to **SCHWARZ**. Pursuant to their agreement,

whenever Clark obtained an amount of proceeds, **SCHWARZ** was entitled to receive one-half of that amount. For example, each time a cash to close wire was paid from the CCM account for a mortgage loan obtained in the name of a straw borrower for Clark's benefit, **SCHWARZ** would be entitled to take one half of this amount from the CCM account for himself. As of March 26, 2007, Clark and **SCHWARZ**, based on their own accounting, obtained more than $28 million in proceeds from Cay Clubs, including salary payments, payments to third parties including for cash to close for condominium unit purchases, cash transfers, and credit card payments.

12. **DAVID W. SCHWARZ** and Dave Clark engaged in a series of acts designed to conceal their receipt of proceeds from Cay Clubs, including: (a) paying Clark's salary to Individual #1; (b) failing to issue any W-2 or 1099-MISC to Clark reflecting his salary payments; (c) failing to issue a Schedule K-1 to **SCHWARZ** and Clark for any of the proceeds and distributions for any of the Cay Clubs entities during the operation of Cay Clubs, including for the cash to close payments for condominium unit purchases; (d) failing to file Form 1065 partnership tax returns for the Cay Clubs entities for the tax years Cay Clubs operated; (e) failing to file any individual tax return for Clark for the tax years Cay Clubs operated, and failing to file an individual return for **SCHWARZ** for tax year 2004; (f) filing false individual tax returns for tax years 2005 through 2007 for **SCHWARZ**, that substantially underreported his income and failed to report millions of dollars of distributions and payments to **SCHWARZ**; and (g) making false statements to others, including during sworn testimony to the U.S. Securities and Exchange Commission, as to their income and distributions from Cay Clubs, as a means of concealing their role in the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-4
## Bank Fraud
## (18 U.S.C. § 1344)

1.  Paragraphs 1 through 15 of the General Allegations section of this Indictment are re-alleged and incorporated herein by reference.

2.  Beginning in or around November 2004, and continuing until at least in or around May 2011, in Monroe County, in the Southern District of Florida, and elsewhere, the defendant,

**DAVID W. SCHWARZ,**

did knowingly and with the intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, and under the custody and control of, one or more financial institutions, including JP Morgan Chase and Fifth Third, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, in violation of Title 18, United States Code, Sections 1344(2) and 2.

### PURPOSE OF THE SCHEME AND ARTIFICE

3.  It was a purpose of the scheme to defraud for the defendant and his accomplices to unlawfully enrich themselves by (a) using straw borrowers to purchase condominium units in investment properties; (b) submitting false and fraudulent loan applications and related documents to lending institutions, containing representations that the cash to close such loans was being provided by the borrower; (c) using the proceeds of these fraudulently obtained loans to operate the Cay Clubs business and make it appear that the business was engaged in legitimate condominium sales; (d) diverting fraud proceeds for their personal use and benefit, and to further the fraud scheme; and (e) concealing the receipt of fraud proceeds by the defendant and his accomplices by not reporting these proceeds on relevant tax documents and not filing tax returns.

8

## THE SCHEME AND ARTIFICE

4. The Manner and Means section of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## EXECUTION OF THE SCHEME AND ARTIFICE

5. On or about the dates specified as to each count below, in Monroe County, in the Southern District of Florida, and elsewhere, the defendant did execute, and cause the execution of, the aforesaid scheme and artifice to defraud, as more particularly described below:

|   |   |   |
|---|---|---|
| 2 | 10/26/2006 | Wire transfer of $162,070.20 for cash to close for loan from JP Morgan Chase of $646,757 in the name of Individual #1, for 19 Sombrero Blvd., Unit 426, Marathon, FL |
| 3 | 10/27/2006 | Wire transfer of $235,258.45 for cash to close for loan from JP Morgan Chase in amount of $565,912 in the names of Individual #2 and Individual #3 for 19 Sombrero Blvd., Unit 432, Marathon, FL |
| 4 | 11/15/2006 | Wire transfer of $30,214.58 for cash to close for loan from JP Morgan Chase of $455,590 in the name of Individual #2 and Individual #3 for 4200 S. Valley View Blvd., Unit 3022G, Las Vegas, NV |

In violation of Title 18, United States Code, Sections 1344(2) and 2.

## COUNTS 5-7
### False Statement In Connection With Federally Insured Loan
### (18 U.S.C. § 1014)

1. Paragraphs 1 through 15 of the General Allegations section of this Indictment are re-alleged and incorporated herein by reference.

2. On or about the dates set forth as to each count below, in Monroe County, in the Southern District of Florida, and elsewhere, the defendant,

**DAVID W. SCHWARZ,**

9

did knowingly and willfully make false statements in connection with a loan application and loan, to a financial institution, that is, JP Morgan Chase, the accounts and deposits of which were insured by the FDIC, which statements the defendant knew to be false, and which statements the defendant made with the intent to influence the action of JP Morgan Chase upon an application for a loan and a loan, as specified below by count:

|   |   |   |
|---|---|---|
| 5 | 10/26/2006 | Execution of mortgage loan application representing that the cash to close and down payment for a loan in amount of $646,757 in the name of Individual #1, for 19 Sombrero Blvd., Unit 426, Marathon, FL, was from the borrower. |
| 6 | 10/26/2006 | Execution of mortgage loan application representing that the cash to close and down payment for a loan in amount of $565,912 in the name of Individual #3 for 19 Sombrero Blvd., Unit 432, Marathon, FL, was from the borrower. |
| 7 | 11/13/2006 | Execution of mortgage loan application representing that the cash to close and down payment for a loan in amount of $455,590 in the names of Individual #2 and Individual #3, for 4200 S. Valley View Blvd., Unit 3022G, Las Vegas, NV, was from the borrowers. |

In violation of Title 18, United States Code, Sections 1014 and 2.

### COUNT 8
**Interference with the Administration of Internal Revenue Laws**
**(26 U.S.C. § 7212(a))**

1. Paragraphs 1 through 15 of the General Allegations and the Manner and Means section of Count 1 of this Indictment are re-alleged and incorporated herein by reference.

2. Beginning in or around November 2004, and continuing until on or about August 12, 2011, in Monroe County, in the Southern District of Florida, and elsewhere, the defendant,

**DAVID W. SCHWARZ,**

10

did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws by, among other things:

### **CORRUPT ENDEAVORS**

a.  On or about August 27, 2004, **DAVID W. SCHWARZ** executed a signature card as Member/Manager of CCM, for BofA account ending in x2969, in Key Largo, Florida.

b.  In or around April 2006, **DAVID W. SCHWARZ** submitted and caused to be submitted to the IRS a Form W-2 purporting to show wages paid to Individual #1 for tax year 2005, that prevented the IRS from being aware that Dave Clark received wages during that tax year.

c.  On or about June 2, 2006, **DAVID W. SCHWARZ** caused a wire transfer of $389,350.79 from the CCM account at BofA ending in x2969, for the cash to close for condominium purchase for himself and family members.

d.  On or about June 8, 2006, **DAVID W. SCHWARZ** caused a wire transfer of $25,000 from the CCM account at BofA ending in x2969, to be transmitted to a family member.

e.  On or about October 26, 2006, **DAVID W. SCHWARZ** caused a wire transfer of $162,070.20 from the CCM account at BofA ending in x2969, for the benefit of Dave Clark.

f.  On or about October 27, 2006, **DAVID W. SCHWARZ** caused a wire transfer of $235,258.45 from the CCM account at BofA ending in x2969, for the benefit of Dave Clark.

g.  On or about October 27, 2006, **DAVID W. SCHWARZ** caused a wire transfer of $235,249.95 from the CCM account at BofA ending in x2969, for the benefit of Dave Clark.

h.  On or about October 30, 2006, **DAVID W. SCHWARZ** caused a wire transfer of $149,941.23 from the CCM account at BofA ending in x2969, to be transferred to Orion Bank account ending in x2402 in Monroe County, for the benefit of Dave Clark.

i. On or about November 15, 2006, **DAVID W. SCHWARZ** caused a wire transfer of $30,214.58 from the CCM account at BofA ending in x2969, for the benefit of Dave Clark.

j. On or about March 26, 2007, **DAVID W. SCHWARZ** transmitted via e-mail to Dave Clark, a document entitled "equity/draw/loan account analysis as of 12/31/06" showing distributions and transfers of Cay Clubs proceeds to **SCHWARZ** and Dave Clark between November 1, 2004 through December 31, 2006, which distributions and transfers were not reported on IRS Form 1065, Schedule K-1, Form W-2 or Form 1099-MISC, for any of the relevant tax years.

k. In or around April 2007, **DAVID W. SCHWARZ** submitted and caused to be submitted to the IRS a Form W-2 purporting to show wages paid to Individual #1 for tax year 2006, that prevented the IRS from being aware that Dave Clark received wages during that tax year.

l. In or around April 2008, **DAVID W. SCHWARZ** submitted and caused to be submitted to the IRS a Form W-2 purporting to show wages paid to Individual #1 for tax year 2007, that prevented the IRS from being aware that Dave Clark received wages during that tax year.

m. On or about July 15, 2010, **DAVID W. SCHWARZ** filed a U.S. Individual Income Tax Return on Form 1040 for tax year 2005, that falsely reported adjusted gross income of $272,195, substantially underreported his income, and failed to report any pass-through income or distributions from the Cay Clubs entities.

n. On or about July 15, 2010, **DAVID W. SCHWARZ** filed a U.S. Individual Income Tax Return on Form 1040 for tax year 2006, that falsely reported adjusted gross income of $547,897, substantially underreported his income, and failed to report any pass-through income or distributions from the Cay Clubs entities.

o.     On or about August 12, 2011, **DAVID W. SCHWARZ** filed a U.S. Individual Income Tax Return on Form 1040 for tax year 2007, that falsely reported adjusted gross income of $214,726, substantially underreported his income, and failed to report any pass-through income or distributions from the Cay Clubs entities.

In violation of Title 26, United States Code, Section 7212(a) and Title 18, United States Code, Section 2.

## FORFEITURE
### (18 U.S.C. § 982(a)(2)(A))

1.     The General Allegations section, and the allegations of Counts 1 through 7 of this Indictment are re-alleged and incorporated herein by reference for the purpose of alleging forfeiture to the United States of America, of property in which defendant **DAVID W. SCHWARZ** has an interest.

2.     Upon conviction of any of the offenses alleged in Counts 1 through 7 of this Indictment **DAVID W. SCHWARZ** shall forfeit to the United States any property constituting or derived from proceeds the defendant obtained directly or indirectly as the result of such offense or a conspiracy to commit such offense.

3.     The property subject to forfeiture, upon conviction of any of the offenses charged in this Indictment, shall include, but is not limited to a sum of money equal in value to the proceeds traceable to the offense(s).

4.     Pursuant to Title 21, United States Code, Section 853(p), made applicable through Title 28, United States Code, Section 2461 and through Title 18, United States Code, Section 982(b), if any property described above as being subject to forfeiture, as a result of any act or omission of the defendant: cannot be located upon due diligence; has been transferred, sold to, or

deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or, has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States to seek the forfeiture of other property of the defendant up to the value of the above-described forfeitable property.

All pursuant to Title 18, United States Code, Section 982(a)(2)(A), and the procedures set forth in Title 21, United States Code, Section 853.

A TRUE BILL

_____<br>FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
JERROB DUFFY
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

DAVID W. SCHWARZ,

           **Defendant.**
_____/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

**Court Division:** (Select One)

___ Miami    _X_ Key West
___ FTL     ___ WPB     ___ FTP

New Defendant(s)    Yes ___    No ___
Number of New Defendants ___
Total number of counts ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)    No
   List language and/or dialect _____

4. This case will take 20 days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)              (Check only one)

   I    0 to 5 days    ___       Petty    ___
   II    6 to 10 days    ___     Minor    ___
   III    11 to 20 days    _X_    Misdem.    ___
   IV    21 to 60 days    ___    Felony    _X_
   V:    61 days and over    ___

6. Has this case been previously filed in this District Court? (Yes or No)    No
   If yes:
   Judge: _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No)    No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    ___ Yes    _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    ___ Yes    _X_ No

                       _____
                       JERROB DUFFY
                       ASSISTANT UNITED STATES ATTORNEY
                       Court No. A5501106

*Penalty Sheet(s) attached                                     REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: DAVID W. SCHWARZ

**Case No**: _____

Count #: 1

Conspiracy to Commit Bank Fraud

Title 18, United States Code, Section 1349

\* **Max. Penalty**: Thirty (30) years' imprisonment

Counts #: 2-4

Bank Fraud

Title 18, United States Code, Section 1344

\***Max. Penalty:** Thirty (30) years' imprisonment as to each count

Counts #: 5-7

False Statement In Connection With Federally Insured Loan

Title 18, United States Code, Section 1014

\***Max. Penalty:** Thirty (30) years' imprisonment as to each count

Count #: 8

Interference with the Administration of Internal Revenue Laws

Title 26, United States Code, Section 7212(a)

\***Max. Penalty:** Three (3) years' imprisonment

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.