UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 16-10039-CR-MOORE (GRAHAM)

UNITED STATES OF AMERICA,

vs.

DAVID W. SCHWARZ,

      Defendant.
_____/

### GOVERNMENT'S OPPOSITION TO CORRECTED MOTION IN LIMINE TO PREVENT THE GOVERNMENT FROM PRESENTING INADMISSIBLE, IRRELEVANT AND PREJUDICIAL EVIDENCE AT TRIAL

The United States, by and through the undersigned Assistant United States Attorney, hereby files this opposition to defendant David W. Schwarz's Corrected Motion in Limine to Prevent the Government from Presenting Inadmissible, Irrelevant and Prejudicial Evidence at Trial (DE 349).

"Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevant evidence is admissible unless" otherwise provided. Fed. R. Evid. 402. "Irrelevant evidence is not admissible." *Id*. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"The district court possesses broad discretion to admit evidence if it has any tendency to prove or disprove a fact in issue. Conversely, the court's discretion to exclude evidence under Rule 403 is limited. Evidence may be excluded only when 'its probative value is substantially

1

outweighed by the danger of unfair prejudice.'" *United States v. Terzado-Madruga*, 897 F.2d 1099, 1117 (11th Cir. 1990) (quoting Fed. R. Evid. 403)(internal citations omitted). In the Eleventh Circuit, the Rule 403 balancing test "should be struck in favor of admissibility." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006) (quoting *United States v. Norton,* 867 F.2d 1354, 1361 (11th Cir.1989)). Further, courts should "look at evidence in a light most favorable to its admission, maximizing probative value and minimizing its undue prejudicial impact." *Id*. (quoting *United States v. Elkins,* 885 F.2d 775, 784 (11th Cir.1989)). Rule 403 exclusion "is an extraordinary remedy that should be used only sparingly since it permits the trial court to exclude concededly probative evidence." *United Statse v. Chandler*, 996 F.2d 1073, 1101 (11th Cir. 1993); *see also United States v. Cole*, 755 F.2d 748, 766 (11th Cir. 1985).

In his motion, the defendant suggests that the conspiracy charged in Count 1 of the indictment is limited to the two specific transactions set forth in Counts 3 and 4 of the indictment, and he seeks to limit the government's case to evidence relating to those two specific transactions (DE 349:2-3, 6-7). However, the specific crimes charged in substantive counts of an indictment do not limit the scope of a conspiracy charged in a separate count. *See Beaudine v. United States*, 368 F.2d 417, 424 (5th Cir. 1966)[1] ("The Government offered in evidence the papers concerning approximately 24 home loan transactions in which Mulvey claimed he and Beaudine had an interest. We quickly agree with the Government that, contrary to Beaudine's attack, this was perfectly proper. With a conspiracy count, the Government was not limited to either the loan transactions which formed the basis of the substantive counts or comprised the overt acts in

---

[1] The Eleventh Circuit Court of Appeals has adopted as binding precedent Fifth Circuit decisions handed down as of Sept. 30, 1981. *See Bonner v. Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

the conspiracy count."). To the contrary, the conducted covered by the conspiracy in Count 1 is far broader than the conduct covered in the substantive counts of the indictment. Count 1 charges a conspiracy that ran from November 2004 to May 2011, while the substantive counts cover only transactions occurring in October and November of 2006. Count 1 charges a conspiracy to defraud multiple mortgage lenders, including JPMorgan Chase, Fifth Third Bank, and Countrywide Home Loans. The substantive counts only involve mortgages obtained from JPMorgan Chase. *See United States v. Kessler*, 449 F.2d 1315, 1317 (2nd Cir. 1971) ("[A]lthough the evidence with respect to the events of June 6 and 13, 1964, may have been insufficient to establish each of the essential elements of the two substantive counts beyond a reasonable doubt, the proof of Kessler's involvement, when considered with other testimony, was sufficient to support the conspiracy charge. Despite Kessler's acquittal on Counts 4 and 6, there was ample other proof of his complicity in the conspiracy, which was not limited to the two dates alleged in the substantive counts but allegedly extended over a period from January 1, 1964, until April 11, 1967."); *see also Alvarado v. United States*, 2007 WL 1033466 at *1, n.2 (D.Conn. 2007) ("Although Alvarado is correct that the first three substantive counts would not fall within the April to October 2002 time period, the conspiracy count was not limited to the conduct charged in the substantive counts, but involved the sales articulated at the plea proceeding and acknowledged by Alvarado."). Accordingly, the scope of the evidence relevant to Count 1 goes beyond just the evidence relevant to Counts 3 and 4.

**I.      Testimony of Internal Revenue Service (IRS) Witness Joanne Leavitt**

The defendant moves to exclude the testimony of IRS witness Joanne Leavitt. At the first trial, Ms. Leavitt was called to provide testimony regarding the tax violations charged in Count 8 of the indictment. As Count 8 has been dismissed (DE 346), Ms. Leavitt will not be called as a

witness for that purpose at trial. Nor will she offer any testimony regarding the defendant's income tax returns during the government case-in-chief. Instead, Ms. Leavitt will be called to provide testimony regarding the income tax returns of the alleged straw buyers produced by the IRS in response to *ex parte* motions (DE 351). That evidence is directly relevant to the crimes charged in the indictment. For example, Count 1 alleges, in part, that members of the charged conspiracy created loan applications that would "include false claims of employment, wages, assets and liabilities for the named borrowers" and submitted those applications to financial institutions such as "JP Morgan Chase and Fifth Third, and to other lenders, including Countrywide Home Loans, Inc" (DE 2:5). The straw borrowers' tax returns are directly relevant to demonstrating that statements in the loan applications were false. Further, the indictment alleges that the defendant "caused the monthly mortgage payments for these loans to be paid from accounts funded via the [Cristal Clear Management] account" (DE 2:6). Thus, the straw borrowers' failure to declare these mortgages on their income tax returns is further evidence that they were not the true buyers of the properties.

As to the defendant's suggestion that Ms. "Leavitt had no bounds to what she opined" during the first trial (DE 349), Ms. Leavitt's testimony is bound by the Federal Rules of Evidence. Defense counsel can raise appropriate objections if Ms. Leavitt's testimony goes beyond what is allowed by the Rules.

II.   **Evidence of Tax Issues**

The defendant moves to exclude evidence regarding the defendant's "tax evasion or obstruction of an IRS investigation" (DE 349:11). Evidence regarding the defendant's failure to pay income taxes is both relevant and admissible. *See United States v. Hatfield*, 685 F.Supp.2d 320, 324 (E.D.N.Y. 2010) ("If, as Defendants claim, they were legally entitled to all the

compensation they received from DHB, they would have reported this compensation as income to the IRS. The fact that they allegedly did not demonstrates the Defendants' consciousness of guilt") (citing *United States v. Hogan,* 886 F.2d 1497, 1507 (7th Cir.1989) ("evidence that Hogan did not report the money he received from attorneys suggests that he knew that the payments were unlawful") and *United States v. Latysheva,* 162 Fed.Appx. 720, 725 (9th Cir. 2006) (evidence that defendants failed to pay taxes more probative than prejudicial "because they provided circumstantial support for the knowledge element of the money laundering offense")). Nonetheless, the government will not seek to introduce any such evidence in its case-in-chief. The government may seek to admit such evidence in either its cross examination of the defendant (should he testify) or in its rebuttal case. The only tax evidence the government will submit in its case-in-chief relates to the tax returns of the straw buyers, which is relevant for the reasons set forth above.

**III.    Evidence of Cay Clubs' Financial Troubles or of Aggrieved Buyers**

The government will not call as trial witnesses any Cay Clubs investors, nor will it offer evidence that Cay Clubs investors lost money on their investments. However, the government will offer evidence regarding the financial troubles of Cay Clubs because that is directly relevant to the conspirators' motives for conducting the mortgage fraud scheme. "Courts have long held that evidence of financial difficulties is admissible in fraud prosecutions to demonstrate knowledge, motive, intent, design, and absence of mistake." *United States v. Metallo*, 908 F.2d 795, 798 (11th Cir. 1990).

Seven of the mortgages in question were obtained in 2004 from Fifth Third Bank based on sales to Cay Clubs insiders Cristal Coleman and Barry Graham. Those were the first seven sales by Cay Clubs at the Clearwater property to close. The defendant has previously testified that these

transactions "were forced through, they were pushed through hard because we wanted some sales in 2004 on our financial statements. . . . Because otherwise, the whole year of 2005 we're going to -- you know, when we're trying to establish credit with Office Depot and we send them financial statements, we've got no revenue for 2004" (DE 146, Ex. 34F at transcript page 292). Thereafter, Cay Clubs used those sales in marketing materials (DE 146, Ex. 31A at p.11). While the government will not offer evidence that investors relied on those marketing materials or suffered losses as a result, the marketing materials themselves show part of the motivation behind the fraudulent sales.

Beginning in October 2006 and continuing through December 2006, a series of condominium units at properties operated by Cay Clubs in Marathon, Florida; Sarasota, Florida; and Las Vegas, Nevada were purchased by family members of Cay Clubs co-owner Fred Davis Clark, Jr. The defendant has previously testified that, beginning in the summer of 2006, Cay Clubs began experiencing cash flow issues that "were most acute in September" (DE 146, Ex. 30C, transcript page 430). The existence of that cash crunch is reflected in contemporaneous Cay Clubs records (DE 145, Exs. 20A & 20B). As a result, Cay Clubs did not have the funds needed to make a curtailment payment due on a mortgage owed to Orion Bank or to make leaseback payments due to investors (DE 145, Exs. 20A, 20B & 22F). These financial difficulties were the direct motivation behind the sales to Clark's relatives, which generated millions of dollars in revenue for Cay Clubs and allowed it to make its curtailment payment to Orion Bank. Thus, this evidence is directly relevant to the crimes charged in the indictment. *See United States v. Hanna*, 198 F.Supp.2d 236, 245 (E.D.N.Y. 2002) ("[P]roof of profits that HGI and Maidstone made from the alleged sham lock-ups is relevant and admissible on the issue of the motive for making these deals.

6

In addition, the different compensation for brokers with respect to House Stocks and other securities is relevant to the broker's motive to sell the House Stocks.").

### IV. Testimony from the Securities and Exchange Commission and from Other Civil and Criminal Trials.

The government has provided notice of its intention to offer redacted transcripts of the defendant's prior testimony in various civil and criminal proceedings (DE 354). Although not required to provide these transcripts until 10 days prior to trial (DE 318:4), the government provided the defense with those transcripts in December 2021. Those transcripts are admissible as admissions by a party opponent under Federal Rule of Criminal Procedure 801(2). The transcripts have been redacted so as to include only those portions of the defendant's testimony relevant to the present indictment. The defendant makes general allegations that the transcripts contain irrelevant testimony without specifically citing to which portions of the transcripts are irrelevant. Further, the defendant objects that "because [the transcripts] are extensively redacted" they "do not give an accurate picture of the deposition testimony and should not be allowed to confuse and prejudice the jury" (DE 349:16). However, the defendant does not offer his "own version of the transcripts for presentation to the trier of fact," as required by this Court's scheduling order (DE 318:4). As the defendant has failed to produce his own version of these transcripts for the Court's consideration, the Court should admit the transcripts as prepared by the government.

## V. Evidence of Fred Davis Clark, Jr.'s conviction

As the motion *in limine* states, the government will not offer evidence of Clark's conviction.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: */s/ Sean Paul Cronin*
Sean Paul Cronin
Assistant United States Attorney
Court No.A5500940
99 N.E. 4th Street, Suite 400
Miami, FL 33132
Tel# (305) 961-9194
sean.p.cronin@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 27, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Sean Paul Cronin*
Sean Paul Cronin
Assistant United States Attorney
