UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-10039-CR-MOORE (GRAHAM)

**UNITED STATES OF AMERICA**

vs.

**DAVID W. SCHWARZ,**

    **Defendant.**

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this sentencing memorandum. The government has previously briefed the proper scope of the relevant loss amount and the applicability of the enhancements set forth in the Presentence Investigation Report (PSI) (DE 429, 435, 457). The government files this sentencing memorandum in order to address the Section 3553(a) factors and the recommended sentence. After the defendant's first trial, the Court carefully considered the Section 3553(a) factors and found that 40 years of imprisonment (a significant downward departure from the advisory guideline range) was a reasonable sentence. As the defendant stands convicted of the same three bank fraud counts of which he was convicted at the first trial, that analysis remains sound.

### ARGUMENT

**1.    Nature and circumstances of offense and history and characteristics of defendant**

In support of his sentencing memorandum, the defendant has submitted letters from several of his family members attesting to his character. However, as the Court noted at the defendant's initial sentencing hearing:

> I mean -- on the one hand, you admire their love for their father or their husband, but they just, I think, are incapable of understanding the depth and the breadth and the suffering and the financial loss that he has caused others.

(DE 204:53). The Court went on to state:

> Mr. Schwarz is an intelligent man, he is well-educated; he had the ability to earn a decent and honest living, and he chose not to. Over a period of many years, he took his intelligence and used it for his own greed and harmed thousands of people. They're never going to get their money back, or it's certainly unlikely that they'll ever see any of that money. . . . [T]o this day, Mr. Schwarz has shown not one ounce of remorse or acceptance of responsibility for the harm that he has caused. Instead, at every turn, whenever he has been engaged with Government or law enforcement, he has attempted to thwart and obstruct the investigation and try to baffle his way out of his conduct with some twisted explanation on what he was trying to do.

(*id.* at 59-60). Six years later, the defendant still has shown neither remorse nor acceptance of responsibility.

With respect to the defendant's request that the Court consider applying the two-point reduction for zero-point offenders under the version of USSG § 4C1.1 scheduled to go into effect in November, the Court must calculate the advisory guideline range based on the sentencing guidelines in effect on the date of the sentencing hearing. *See United States v. Bradley*, 644 F.3d 1213,1284 n. 123 (11th Cir. 2011). While a pending amendment to the guidelines could potentially serve as the basis for a downward departure from that properly calculated guideline range, the defendant in this case would not qualify for a reduction under the new Section 4C1.1 because he personally caused substantial financial hardship and he is subject to an aggravated role enhancement under Section 3B1.1. *See* proposed USSG § 4C1.1(6) and (10).

As noted in his sentencing memorandum, the defendant is 67 years old (DE 463:4). While "[a]ge . . . may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines," USSG § 5H1.1, the defendant's age, standing alone, does not make this an atypical case. As set forth in Section 6

below, multiple courts have imposed lengthy sentences on older defendants who were convicted of significant financial fraud crimes.

2. **Need For Sentence to Reflect Seriousness of Offense; Afford Adequate Deterrence; Protect the Public; and, Provide Any Needed Correctional Treatment**

The nature and seriousness of the offense is properly reflected in the advisory guideline sentence. The Probation Office has received responses from more than 135 individual and institutional victims of the Cay Clubs fraud scheme, as well as other evidence related to the scope of the fraud and the harm it caused to ordinary citizens. Many of the individuals lost their life savings, had to file for bankruptcy, or lost their credit, as a result of investing in a company that was built on, and artificially sustained by, bank fraud. If investors had known that the Defendant and his co-conspirators had engaged in bank fraud with respect to the first seven sales in 2004, or that additional fraudulent transactions were required to obviate a cash crunch in 2006, they could have avoided making their ill-fated investments in Cay Clubs. Indeed, during his first trial the Defendant acknowledged that if potential investors knew about the cash crunch "that would have a dramatic impact on a prospective customer" (DE 217:36).

A substantial sentence is also appropriate in order to deter others from engaging in this type of fraud scheme, and to protect the public from Defendant's unwillingness to conform his conduct to the law. The Defendant has no known educational, vocational, or other correctional treatment needs that should be taken into account for sentencing purposes.

3. **The Kinds of Sentences Available**

Incarceration is the most appropriate sentence available.

4. **The Sentencing Range as Reflected in the Sentencing Guidelines**

The defendant's adjusted offense level is 47 (PSI ¶ 67). Because the total offense level is in excess of 43, it is reduced to 43 (PSI ¶ 70). The resulting guideline range would be life

3

imprisonment (PSI ¶ 112). However, because the combined maximum statutory term of imprisonment for the three counts of conviction is 1,080 months, that becomes the advisory guideline range under USSG § 5G1.2(b) (*id*.).

5. **Any Pertinent Policy Statement**

The Court should consider the Sentencing Guidelines as a whole in determining the advisory guideline range and fashioning a fair and just sentence in this case.

6. **Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have been Found Guilty of Similar Conduct**

The most directly relevant sentence with respect to this factor is the 480-month sentence imposed on the defendant's co-conspirator Fred Davis Clark after Clark was convicted at trial. The fact that Clark's sentence of imprisonment was commuted by the President after he served approximately six and a half years is of no moment, as a Presidential commutation is not constrained by consideration of the Section 3553(a) factors, or any other statutory considerations.[1] *See United States v. Montgomery*, 2021 WL 1857339, at *3 (M.D.Tenn., May 10, 2021) ("Defendant Montgomery asks the Court to find that the commutation of [Co-]Defendant Davis' sentence and the resulting sentencing disparity constitutes extraordinary and compelling reasons [for compassionate release]. The Government disputes that the commutation is an extraordinary and compelling reason on its own, and further argues that the considerations for a presidential commutation are immaterial for a court's Section 3553(a) analysis. The Court agrees with the second point. Commutations are not bound by the Section 3553(a) factors, and White House press releases describing the offense as 'a financial conflict of interest' from which 'no one suffered financially' are not subject to review against the record in this case."); *United States v. Strong*,

---

[1] The commutation order left in place both Clark's restitution order in the amount of $179,076,941.89 and his five-year term of supervised release.

4

2021 WL 75660, at *6, n.6 (S.D.N.Y. January 7, 2021) ("Nor does the Court find recent presidential pardons to be relevant to the instant § 3553(a) analysis.").

While some members of the conspiracy in this case received sentences of 60 months of imprisonment, those co-conspirators are not similarly situated to the defendant. Unlike the defendant, they pled guilty, accepted responsibility, cooperated with the government's investigation, and were convicted of a crime that had a five-year statutory maximum sentence. *See United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) ("[D]efendants who cooperate with the government and enter a written plea agreement are not similarly situated to a defendant who provides no assistance to the government and proceeds to trial."); *see also United States v. Sigillito*, 759 F.3d 913, 941 (8th Cir. 2014) (upholding defendant's 40 year sentence of imprisonment even though his two co-defendants, who pled guilty and cooperated with the government, received sentences of 36 months of imprisonment and probation, respectively).

In his sentencing memorandum, the defendant cites to a single example of a case in which defendants convicted of wire fraud offenses received sentences significantly shorter than 40 years (DE 463:10). However, there are numerous examples of similarly situated federal defendants who received sentences in line with the 40-year sentence previously imposed in this case. For example:

    a.    *United States v. Domenico Rabuffo*, 716 Fed.Appx. 888 (11th Cir. 2017). The Court upheld a 327-month sentence imposed on a defendant convicted at trial of conspiracy to commit bank and wire fraud and multiple counts of bank fraud in connection with a real estate fraud scheme that involved obtaining mortgages through straw buyers. The scheme resulted in a reasonably foreseeable loss amount in excess of $50 million. Rabuffo was **78 years old** at the time of sentencing. *See United States v. Rabuffo*, Case No. 14-CR-20088-Moore (S.D.Fla., DE 465 at 18).

    b.    *United States v. Darryl Burke*, 645 Fed.Appx. 883 (11th Cir. 2016). The Court upheld a 30-year sentence imposed on a defendant convicted at trial of conspiracy to commit bank fraud and bank fraud in connection with a mortgage fraud scheme that resulted in a loss of more than $7 million but less than $20 million.

    c.    *United States v. Frederick C. Brandau*, Case No. 99-CR-08125-Hurley (S.D.Fla.). The Court imposed a 55-year sentence on a defendant convicted at trial of conspiracy to commit mail fraud and multiple substantive counts of mail fraud and money laundering in connection with an investor fraud scheme that resulted in a loss of $177 million. *Aff'd*, 46 Fed.Appx. 617 (11th Cir. 2002)(table).[2]

    d.    *United States v. Martin T. Sigillito*, 759 F.3d 913, 941 (8th Cir. 2014). The Court upheld a 40-year sentence imposed on a defendant convicted at trial of multiple counts of wire fraud, mail fraud, conspiracy to commit wire and mail fraud, and money laundering in connection with a $52 million Ponzi scheme. The Eighth Circuit noted that "the district court expressly intended [the 40-year sentence] to be a life sentence." The defendant was **63 years old** at the time of sentencing. *See United States v. Sigillito*, 2012 WL 11906810, at *20 (E.D.Miss. 2012).

    e.    *United States v. Keith Franklin Simmons*, Case No. 3:10-CR-23-Conrad (W.D.N.C.) The Court imposed a 40-year sentence on a defendant convicted at trial of one count of securities fraud and one count of wire fraud in connection with a Ponzi scheme that resulted in a $35 million loss.[3]

    f.    *United States v. Timothy S. Durham*, 766 F.3d 672 (7th Cir. 2014) and *United States v. Timothy S. Durham*, 630 Fed.Appx. 634 (7th Cir. 2016). The Court upheld a 50-year sentence imposed on a defendant convicted at trial of conspiracy to commit wire fraud and securities fraud, securities fraud, and multiple counts of wire fraud in connection with a Ponzi scheme that had an actual loss of $202 million and an intended loss of $250 million.

    g.    *United States v. James Clark Nix*, 2023 WL 3580703 (5th Cir. May 22, 2023). The Court upheld a 48-year sentence imposed on a defendant convicted at trial of one count of conspiracy to commit wire fraud, one count of wire fraud, and two counts of money laundering in connection with an investment fraud scheme that resulted in a loss of approximately $6.6 million. The defendant was **73 years old** at the time of sentencing.[4]

---

[2] On July 23, 2000, the Court granted Brandau's motion for compassionate release and reduced his sentence to time served in light of his age (75 years), health conditions, and the COVID-19 pandemic.

[3] The District Court originally imposed a 50-year sentence, but the Fourth Circuit Court of Appeals vacated the defendant's two money laundering convictions, resulting in a reduction of the combined statutory maximum term of imprisonment for his fraud convictions to 480 months. *See United States v. Simmons*, 737 F.3d 319 (4th Cir. 2014).

[4] https://www.justice.gov/usao-edtx/pr/austin-area-man-sentenced-48-years-federal-prison-fraud-and-money-laundering-violations

      h.      *United States v. Edward Okun*, 453 Fed.Appx. 364 (4th Cir. 2011). The Court upheld a 100 year sentence imposed on a defendant convicted at trial of one count of conspiracy to commit mail fraud and wire fraud, one count of conspiracy to commit money laundering, twelve counts of wire fraud, seven counts involving money laundering, one count of bulk cash smuggling, and one count of making a false declaration in connection with his operation of a "Ponziesque" scheme that resulted in losses in excess of $125 million dollars.

      i.      *United States v. Richard Olive*, 804 F.3d 747 (6th Cir. 2015). The Court upheld a 31-year sentence imposed on a defendant convicted at trial of three counts of mail fraud, four counts of wire fraud, and two counts of money laundering in connection with an annuities fraud scheme that resulted in a loss of approximately $6 million.

      j.      *United States v. Charles Lewis and Norman Schmidt*, 594 F.3d 1270 (10th Cir. 2010). The defendants were convicted at trial of various mail fraud, wire fraud, securities fraud, and money laundering offenses in connection with a Ponzi scheme run through a number of ostensible investment companies that resulted in a loss of more than $40 million. The Court upheld Lewis' sentence of 30 years of imprisonment. Lewis was **72 years old** at the time of sentencing. *See United States v. Lewis*, Case No. 04-CR-103-Blackburn (D.Co., DE 1559 at 30).[5] Schmidt had been sentenced to 330 years of imprisonment. The Court found that the sentenced had to be reduced to 310 years of imprisonment after it reversed four counts of conviction, but found that the sentence was otherwise reasonable. Because "a proper calculation under the guidelines leads to an advisory sentence of life imprisonment" the Court found "it was eminently reasonable for the district court to impose a sentence functionally equivalent to life imprisonment by imposing the maximum sentence for each crime of which Schmidt was convicted and making the sentences consecutive." *Schmidt*, 594 F.3d at 1275. Schmidt was **72 years old** at the time of sentencing. *Id.* at 1276.

As the Court noted in imposing the original 40-year sentence in this case:

I think the Government has offered a very reasonable explanation for the sentence that it seeks; and that is a sentence that is consistent and avoids unwanted disparity with the codefendant, that he was on a equal footing, within terms of responsibility, for carrying out the fraud and has also provided the Court with a number of other cases in this district for similar types of offenses and similar types of amounts and

---

[5] On August 17, 2020, the Court granted Lewis' motion for compassionate release and reduced his sentence to time served in light of his age (84 years), health conditions, and the COVID-19 pandemic.

provided the sentences that were imposed in those cases that would suggest a similar type of disposition in this case.

(DE 204:60-61).

**7.      The Need to Provide Restitution to Victims**

The sentenced imposed in this case should include an order of restitution to the identifiable victims.

## CONCLUSION

WHEREFORE, the Court should re-impose a sentence of 40 years of imprisonment to be followed by 5 years of supervised release and order the defendant to pay restitution in the amount of $179,932,149.32.[6]

                                                Respectfully submitted,

                                                MARKENZY LAPOINTE
                                                UNITED STATES ATTORNEY

By:  */s/ Sean Paul Cronin*
      Sean Paul Cronin
      Assistant United States Attorney
      Court No.A5500940
      99 N.E. 4th Street, Suite 400
      Miami, FL 33132
      Tel# (305) 961-9194
      Fax: (305) 530-6168
      sean.p.cronin@usdoj.gov

---

[6] The Court originally structured the 40-year sentence as 360 months as to Count One and consecutive sentences of 60 months each as to Counts Three and Four.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 7, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ *Sean Paul Cronin*
Sean Paul Cronin
Assistant United States Attorney

9