UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CR-10039-GRAHAM

UNITED STATES OF AMERICA,

                           Plaintiff,

vs.

DAVID W. SCHWARZ,

                    Defendant.

_____/

## DEFENDANT SCHWARZ'S MOTION TO REQUIRE THE GOVERNMENT TO COMPLY WITH THE SENTENCING REQUIREMENTS AND BURDENS  ESTABLISHED BY LAW

DAVID W. SCHWARZ, by and through undersigned counsel, pursuant to Federal Rule of Criminal Procedure 47, moves this Honorable Court to hold the government to its required legal burden, finding that the government has not met its burden with regard to relevant conduct, or to amount of loss. Mr. Schwarz has no burden of rebuttal until the government satisfies its burden by a preponderance of the evidence. Therefore, to require defendant to call rebuttal witnesses improperly shifts to the defendant a burden the government has not and cannot satisfy.

The government cannot use the sentencing phase of the trial to introduce an entirely new trial, one that has never been indicted and nor presented to a jury. The government belatedly and improperly submits evidence that purports to demonstrate conduct and losses relevant to the actual charges, but which is nothing but a poor attempt to retry an investor fraud case – the very case the Eleventh Circuit explicitly rejected.

The government has not even shown adequate evidence to establish a loss amount on the handful of transactions that at least in theory can be connected to Mr. Schwarz's having sent the cash to close several loans. The maximum possible loss amount from the handful of loans for which Mr. Schwarz sent the cash to close is less than $3.4 million. That is the maximum theoretical amount given the evidence in the record. The government has not, and likely cannot even though it has been afforded numerous bites at the apple, prove even that amount.

## I. THE GOVERNMENT NEVER MADE THE REQUIRED SHOWING THAT THE FACTS THEY RELIED ON SHOW RELEVANT CONDUCT; THE GOVERNMENT NEVER PROVED THE LOSS AMOUNTS

### A. The Government Did Not, and Cannot, Satisfy Its Burden of Proof to Demonstrate Relevant Conduct for Purposes of Sentence Enhancement

It is the government's burden to prove by a preponderance of evidence any conduct the government deems to be relevant conduct sufficient to allow for an enhancement that will augment a defendant's sentence. Mr. Schwarz challenged the government's proposed enhancements. Once the government's proposals concerning relevant conduct to a conviction is so challenged, the burden falls strictly on the government to prove by a preponderance of evidence that their factual allegations are not only true and accurate, but also that the allegations demonstate conduct that is relevant to the actual charges the grand jury indicted. *United States v. Hamidullah,* 768 Fed.Appx. 914, 918 (11th Cir. 2019) (Objections to PSI report "shifted the burden to the government to prove the disputed facts by a preponderance of the evidence and imposed on the district court a duty to ensure that the government carried that burden"). The defendant has no burden to prove anything regarding proposed relevant conduct. On the contrary, shifting the burden of proof from the prosecutor to the defendant violates procedural and substantive due process.

If Schwarz is to be subjected, contrary to his constitutional rights, to criminal liability for conduct never indicted, never tried,

and never convicted, the government must specifically show by a preponderance of the evidence how Mr. Schwarz's alleged conduct led to the alleged losses. The preponderance standard holds the government to the burden of proving how these alleged losses were more likely than not to have occurred due to whatever unindicted, untried, and non-convicted conduct of the defendant the government believes is proper to introduce at his sentencing. The government seeks to convert a sentence of at most a few years to a sentence of life in prison; it is an elementary requirement of basic justice to hold the government to its burden in making such a preposterous request.

First, the Government has the burden of presenting sufficient and reliable evidence to prove the necessary facts by a preponderance of evidence. *United States v. Washington*, 714 F.3d 1358 (11th Cir. 2013). In *Washington*, the Eleventh Circuit reversed because the district court did not require the government to show the enhancement by a preponderance of the evidence. Id. at 1360-61. Judge Jordan, writing for the Eleventh Circuit in *Washington*, notes that "sometimes a number is just a number, but when the number at issue triggers an enhancement under the Sentencing Guidelines, that number matters." 714 F.3d at 1359. To that end, the Eleventh Circuit has held elsewhere that "it is the District Court's duty to

ensure that the government carries this burden by establishing a sufficient and reasonable basis for its request for enhancement." *United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999).

Just recently, in *United States v. Titus,* ---- F.3d ----, No. 22-1516 (3rd Circuit, Aug. 22, 2023), the Third Circuit remanded a sentence that had been improperly augmented. In *Titus*, a doctor had been convicted for writing unlawful prescriptions. At sentencing, the government in *Titus* put on evidence of unlawful scripts that were beyond the actual handful of prescriptions at issue in the indictment. The Third Circuit held that the trial court erred by sentencing the defendant for behavior extrapolated from the conduct presented at trial. That is, the trial court could not, as the government wishes this Court to endeavor, hold a defendant responsible for wrongful conduct that had not been adequately proved. In this case, the government has not even performed the kind of mathematical extrapolation undertaken in *Titus*. The government in the case at bar has an even feebler connection than did the *Titus* prosecutors between the conduct tried and the conduct purported for a sentence enhancement.

The standard of preponderance of the evidence is not a toothless standard, and a trial court has the obligation to exercise "judicial

skepticism" in the face of an attempt to impose a lengthier sentence than is normal for the base crime charged. *United States v. Lawrence*, 47 F.3d 1559, 1567 (11th Cir. 1995). The court in *Lawrence* explained the position of the district court judge:

> [T]he Guidelines do not reduce district court judges to mere automatons, passive compilers of ciphers, or credulous naifs who must accept as canon all that which is presented to them regarding a defendant's involvement in the crime charged or conduct relevant thereto...[T]he preponderance of the evidence standard...does not relieve the sentencing court of the duty of exercising the critical fact-finding function that has always been inherent in the sentencing process....[The standard signifies] a recognition of the fact that if the probation officer and the prosecutor believe that the circumstances of the offense, the defendant's role in the offense, or other pertinent aggravating circumstances, merit a longer sentence, they must be prepared to establish that pertinent information by evidence adequate to satisfy the judicial skepticism aroused by the lengthier sentence that the proffer information would require the district court to impose.

*Id.* at 1567. *Citing United States v. Wise*, 976 F.2d 393, 402-03 (8th Cir. 1992).

If the government intended to augment Schwarz's sentence from a few years in prison to a life sentence based exclusively and entirely on evidence that never came before a jury, and that is irrelevant and unrelated to the charged and convicted conduct, then the

government must at least[1] show by a preponderance of the evidence how Schwarz's conduct caused individual borrowers to default. In fact, the obvious explanation for any of the losses of real estate value and the purported subsequent losses to the banks and Wall Street institutions was the largest real estate crisis since the 1930s. The government has to show that it was more likely than not that Schwarz's sending the cash to close a relatively small number of loans,[2] and not a worldwide financial catastrophe, was responsible for the losses.  The causation issue is critical to the question of relevant conduct and the establishment of a "loss" number alone is insufficient to meet its burden.

For example, the government had to have shown how Iberia Bank (Orion Bank's successor), a bank to which Schwarz never sent a dollar to close a single loan, lost 2% of its loan value on Florida

---

[1] The Defendant preserves the argument for further review that, in order to meet constitutional standards, conduct used in sentencing must be proven beyond a reasonable doubt to a jury of the defendant's peers.  Here, the government has failed in its burden to show it by a preponderance standard.

[2] There is a dispute regarding the number of loans Schwarz participated in. Under no conceivable reading of the facts, however, could Mr. Schwarz be responsible for more than the fourteen loans for which the government alleged he sent the cash to close. Such loans would account for less than 1% of the total Cay Club loans closed.

properties (D.E. 429-13-Ex M.) due to Schwarz's having sent cash to close loans in, for example, Las Vegas. The government must also have shown how a loss is attributable to Mr. Schwarz for loans that closed after he had long left the company. Importantly, the government must have demonstrated that each loss actually occurred, showed actual accountings proving actual losses, and proven that it is more likely than not that the losses incurred were due to Schwarz's actions, and not to the worldwide financial ruin that caused every other similarly situated asset in the country to lose as much or more value at the exact same time. The government must have shown that the individual borrowers who reneged on their obligations to pay their mortgages and went into default did so on account of the actions of Mr. Schwarz's moving funds for a handful of unrelated loans. The government has done none of that.

The government must have performed this analysis before sentencing. The government must have shown proof for each of the one thousand loans that the government, in violation of Schwarz's Sixth and Eight Amendment rights, seeks to introduce after the close of trial to augment Schwarz's sentence from at most a few years (a significant part of which sentence he has already served) to a life sentence. *See, e.g., United States v. Patel,* Case No. 19-CR-80181-

RAR (§ 2B1.1 of the U.S. Sentencing Guidelines extends only to losses defendant actually caused).

The government must also make sense of the reams of unintelligible excel sheets that it proposed were a justification for increasing a man's sentence from a sentence of a few years to a sentence of de facto life in prison. For example, the government proposed to rely on alleged losses purportedly incurred by GCB Orlando, et alia (DE 470-8)[3]. Yet these losses, if they were sustained at all, are not relevant to a purported bank fraud scheme and, indeed, the companies in question are not even banks.[4] Yet the government wishes to impose a life sentence for *bank fraud* on losses sustained by these companies. GCB's losses are not relevant to a purported scheme in which Schwarz sent money to other, unrelated banks to

---

[3] GCB was a sophisticated private investor – not a bank - which provided an equity investment to Cay Club entities after an exhaustive review of the financial position, and viability, of those entities.

[4] Even when the law extends bank fraud liability to non-bank entities, it does so under the theory that the banks would ultimately be targeted by the fraud – as in *United States. v. Singer*, in which the Eleventh Circuit noted that fraudulent checks would ultimately be cashed by a bank. 152 Fed.Appx. 869 (11th Cir. 2005). To face liability for bank fraud concerning losses sustained by a non-bank, a defendant must somehow convince a non-bank entity to engage in behavior that ultimately causes a bank to sustain losses. *Loughrin v. United States*, 573 U.S. 351 (2014). There has been no such evidence here.

close loans issued by those other, unrelated banks. GCB's losses are not relevant to bank fraud under any conceivable rendition of the facts.

The same argument undermines the majority of the government's other purported "evidence." For example, the witness for Fifth Third, Jeffrey Draves, was a Fifth Third, in-house litigation specialist handling foreclosures and trial proceedings for the bank. The government argues that this fact alone makes Draves's testimony "reliable and credible". However, the government completely misses the point: Draves's testimony must also be relevant to the issues at hand. The majority of Draves's testimony is decidedly not.

Draves testified that the Fifth Third loan losses "attributable to Cay Clubs" were $16,859,771. According to Draves, "attributable to Cay Clubs" means any loans the bank made that were collateralized by Cay Club condominiums. A given loan is no more "attributable to Cay Clubs" by being mortgaged on property in Cay Clubs grounds than it would be "attributable to the State of Florida" because the loan was secured by real estate in Florida. Rather, the loan losses Draves described were attributable to the borrowers who failed to make mortgage payments on loans concerning which Schwarz and Cay Clubs had no input. The loan losses are not attributable to

Schwarz or Cay Clubs because Schwarz and Cay Clubs *played no part in obtaining the loan and had no liability with respect to repaying the loan*.

Consider Fifth Third's $16 million of listed loan losses. Within that schedule, Draves identified the specific amounts attributable to Graham and Coleman, i.e., the "first seven transactions", as $1,963,490. These losses, if proven, could arise from conduct relevant to the counts of conviction - that is, the losses could in theory be traced to mortgages for which Schwarz wired the cash-to-close. Yet the other $14 million of Fifth Third loan losses relate to loans obtained by independent borrowers. Neither Cay Clubs, nor Schwarz, nor any of his alleged co-conspirators were involved in obtaining these loans in any capacity. Rather, the borrowers, none of whom knew Schwarz (and vice versa), selected which bank they wanted to use (in this case Fifth Third). The borrowers, not Schwarz, interacted with the bank, completed their own loan applications, and provided their own closing funds. After closing, the borrowers were solely responsible for their own mortgage payments without interaction of any kind from Schwarz or Cay Clubs. There is not a shred of evidence to the contrary.

For its part, Fifth Third qualified each of these independent buyers according to Fifth Third's own lending programs, without input from Cay Clubs, Schwarz, or any of his alleged co-defendants. The bank assessed the borrower's risk as well as the value of the underlying collateral, and decided at what terms, if any, it would advance the borrowers a mortgage loan.

At no point did the bank rely on any representations from Cay Clubs. If sometime after closing, years later, the borrowers stopped paying their mortgages and the loans went into default and foreclosure, and Fifth Third ultimately sustained losses on them, that has nothing to do with Schwarz. The fact that a borrower's collateral was originally property Cay Clubs owned does not suddenly make Cay Clubs liable for any losses the bank sustained through a default by a customer that sought that bank out without Cay Clubs's or Schwarz's involvement, applied to that bank without Cay Clubs's or Schwarz's involvement, and submitted himself to liability to that bank without Cay Clubs's or Schwarz's involvement.

In order for specific loan losses to be considered conduct relevant to the counts of conviction, the government would have had to prove that Cay Clubs, Schwarz, or one of his alleged co-conspirators, in some way induced a given bank to make the specific

loans in question to the borrowers. The government would have to show that Schwarz somehow caused a given bank to extend credit for a given loan when it otherwise would not have done so and that this was related conduct to the bank fraud that was actually tried. The government has offered no evidence of such related conduct and therefore the Court must strike the non-relevant Fifth Third Bank alleged loan losses from the loan loss calculation.

The government has no stronger footing for its equally irrelevant assertion on behalf of JP Morgan, as well as on behalf of a string of companies that are not even banks, and that therefore could not have been defrauded by bank fraud. *See:* footnote 4, *supra*. The government did not, and cannot, show that Mr. Schwarz's sending the funds to close on, for example, a loan in Nevada, is more likely than is a worldwide mortgage panic to be responsible for a borrower, years later during that crisis, defaulting on a loan for which Mr. Schwarz sent no funds and made no representation. The government's alleged relevant conduct must be rejected.

B.   <u>The Government Exhibits Are Meaningless or Unintelligible and Do Not Show Proof of Loss Amounts Attributable to Mr. Schwarz</u>

A brief examination of the government's exhibits and their proposed or suggested "proof" shows the government did not, and

cannot, meet its burden of showing that these exhibits they purport to use to prove that Mr. Schwarz more likely than not caused the losses the government claims were sustained:

[DE 470] Notice of Filing of Sentencing Exhibits:

1) Exhibit 1: "Initial Loss Spreadsheet" - a spread sheet presumably prepared by the government, without attestation, alleging losses from assorted entities in the amount of $179,076,941.89.

2) Exhibit 2: "Final Loss Spreadsheet" – a spreadsheet, again, presumably prepared by the government styled "Restitution Loss Calculation" *without attestation* listing various entities with a purported and unsubstantiated loss calculation of $179,932,149.32.

3) Exhibit 3: "Fifth Third Bank Loss Spreadsheet" – an unsubstantiated spreadsheet, again, presumably prepared by the government styled "Cay Cub Loans" listing the unit number, buyer, mortgage number, along with what presumably is the original loan amount, principal, REO proceeds and charge off (loss) in the amount of $16,859,771.31.

4) Exhibit 4: "Coastal Investment Group Declaration of Loss" - This Declaration of Loss is purportedly from the case of *United*

*States v. Fred Davis Clark, Jr.*, Case Number 13-cr-10034-Martinez.  The declaration was purportedly signed by Betsy Kane-Hartnett.  While Ms. Kane-Harnett makes a declaration under penalty of perjury she provides no information as to who she is or her source of knowledge of the information contained within the declaration.  The alleged purported loss is pegged at $25 million for the failure to pay back a loan to Coastal Investment Group (Abel Band).  The borrowers on the note are assorted Cay Club Entities and David Schwarz and Dave Clark, as trustees of the F. Dave Clark Irrevocable Trust.  Included with the Declaration are the purported Loan Agreement, Promissory Note, and Security Agreement with no proof of relevance, reliability, loss, or how any purported loss is related to a bank fraud of less than $3.4 million or to Schwarz. Further, the above entities are obviously not banks nor governmental financial institutions.

5) Exhibit 5: "Interview Report of David S. Band" - this purports to be a Memorandum of Activity (MOA) created by OIG of the Federal Housing Finance Agency prepared on December 2, 2016, from a purported interview of David S. Band purportedly given on November 29, 2016.  The MOA is unsworn, double

hearsay and doubly unreliable, and appears to be unattested. The responses from Band were designed to parrot back the government's faulty theory.

6) Exhibit 6: "JPMC Loss Spreadsheet" – this is a purported spreadsheet alleging losses of JPMC. There is no indication of who prepared the exhibit and how it was prepared.

7) Exhibit 7: "JPMC Loss Spreadsheet Expanded" – this is a 40-page exhibit purporting to contain an appraisal date, appraised value, unpaid balance, and other notations. This is an unsubstantiated, unattested spreadsheet alleging losses of JPMC. There is no indication of who prepared the exhibit and how it was prepared. This unsupported, irrelevant document alleges losses of $67,044,314.66. Interestingly, the document identifies the loan officer as Ross Pickard in over 170 loans. Pickard entered a plea in the Middle District of Florida for mortgage fraud for falsifying loan applications for his own benefit. Pickard was the subject of a *Brady* motion filed by the defense in this case and vigorously opposed by the government. It was the Defense's position that Pickard falsified some of the loan applications in the case heard before the Court (Counts 3 and 4) without Mr. Schwarz's knowledge. The approximately

168 remaining fraudulent loans have no connection to Schwarz whatsoever.

8) Exhibit 8: "GCB Entities Declaration of Loss"- This Declaration of Loss purportedly was offered in the Case of *United States v. Barry Graham*, Case No. 14-cr-10026-Martinez.   While the document is rendered under penalty of perjury the signature is unidentifiable.   The document purports to relate to losses suffered by the GCB entities in the amount of $21 million.   Again, GCB made an equity investment not a loan.   The document purports to identify losses in Orlando and Crested Butte (never identified in the trial).   The declaration attributes losses to fraudulent representations made by "Stokes" and "Graham."   Attached to the declaration is an unsworn civil complaint (Eighth Amended Complaint) wherein David Schwarz and Dave Clark and certain entities are named.   At the time of the filing of the complaint the litigation was still active. Numerous counts of the Complaint were dismissed with prejudice, and the matter was eventually settled without admissions for a de minimis sum.

9) Exhibit 9: "FreddieMac Declaration of Loss" – This "Declaration of Victim Losses" purports to be an exhibit in the case of the

*United States v. Barry Graham*, Case No.14-cr-10026-Martinez in the amount of $8,390,663.   The signature is illegible and purports to have been signed in July of 2015.

10) Exhibit 10: "FreddieMac Loss Spreadsheet" – This is a pur-ported spreadsheet which alleges losses to Freddie Mac.  There is no indication of who prepared the exhibit and how it was prepared.  It alleges losses of $8,390,663.  It was introduced in the initial tainted trial of Schwarz (Moore).

11) Exhibit 11: "Email Regarding Iberia Loss" – This exhibit purports to represent an email exchange between a Jones Walker attorney, Michel Nicrosi, and Assistant United States Attorney Jerrob Duffy on September 29, 2015.  It was purportedly offered in the Dave Clark trial.  This unsworn email is purported to be the support for a loss amount of $16,644,721.13.

[DE 429] Post Trial Memorandum Regarding Relevant Loss by USA (references to transcripts of testimony at Schwarz's initial trial before Judge Moore), all of which are tainted and cannot be considered:

1) Jeffrey Draves (DE 211 : 146-165): –An employee of Fifth Third Bank: Draves offered testimony before Judge Moore at the sentencing.  Draves purported to be a litigation officer which he

explained is an attorney who works in-house for the bank and prepares the trial documents and represents the bank at the foreclosure trial.    He said he reviewed the Cay Club loans that went into default.    He proceeded to testify regarding Government's Exhibit 33A which is a spreadsheet he completed with a list of loan numbers and names, origination date, unit number, borrowers name, bank's loan number, loan amount, principal at the time of the default, and the charge-off which is what the bank lost on these particular loans.  He testified that the bank provided mortgages to 46 Cay Club borrowers of which 42 defaulted.  He identified three loans which were "Coleman" loans and four loans attributed to Barry Graham.  He testified that the bank suffered a charge-off of $16,859,771.31 which represents the loss the bank suffered as a result of the forty-two defaults.  *He added that of the three Coleman loans two of them were paid in full* and one was defaulted on.  (The court in its inquiry of Draves seemed perplexed that a property appraised at $500,000 was later sold for $35,000).  Nothing in Draves's testimony appears to tie these loans to the charged bank fraud.

2) Kathleen Val (DE 212 : 141-146): A JP Morgan Chase employee, Val provided testimony at the Moore trial.  She related that her

position was a recovery investigations manager. She testified that recovery investigations researches and investigates losses to the bank and pursues third-party recoveries. Her testimony was that she reviewed "the books and records" of the bank which related to Cay Clubs. She said she determined which of those loans had a loss. She identified approximately 600 loans that were supposedly issued by the bank to individuals who obtained mortgages. She testified that 364 of those loans went into foreclosure and "JP Morgan Chase suffered a loss." The remaining loans were current (at the time of her testimony) or had been paid off. She testified further that the loss amount was $68 million dollars. She did not examine any of the 364 mortgages personally and said that the spreadsheet she used was prepared by "internal counsel." She offered no connection to the borrowers' defaults and the defendant.

3) Martin Abud (DE 211 : 191-215): Employed by Freddie Mac. Abud said he was a director of mortgage fraud investigations at Freddie Mac. He testified at the Schwarz sentencing before Judge Moore about the nature of conventional loans meeting the guidelines to be purchased by Freddie Mac. To qualify for such a loan a borrower would have to qualify based upon their

income, credit history, and the appraisal of the property.  He was questioned about a "lease-back" payment.  He said such an arrangement would have to be disclosed to the lender (and by inference to Freddie Mac).  The lender, i.e., the banks would go through an approval process by Freddie Mac before the agency purchased their mortgages.  Other instances which would have to be disclosed by the banks include furniture packages and condo/hotel arrangement loans.  Freddie Mac does not purchase loans which include buyer incentives.  Freddie Mac is also concerned with who provides the down payment. And as such a disclosure would be necessary.  There was a total of 169 loans involved in Cay Club properties totaling approximately $48 million.  The banks repurchased approximately 117 loans.  Other loans were prepaid, or the borrowers were making payments on their notes.  The loss to Freddie Mac was approximately $8.8 million. No indication from the witness as to whether Schwarz had anything to do with any of these loans between the borrowers and the banks or between the banks and FreddieMac.

*None of the government offerings above provides any connection to Schwarz.* This lack of causation dooms the government's attempt

to establish by a preponderance of evidence Schwarz's role in the losses asserted by the government. The government cannot meet its burden to establish its proposed sentence enhancement. Moreover, any testimony from the first tainted trial is impermissible, unreliable and cannot be used since Schwarz did not have effective assistance of counsel.

In addition, in *Washington,* the Eleventh Circuit also addressed the issue of the sentencing district court judge adopting enhancements from co-defendants.  The court held that the district court had applied the §2B1.1(b)(2)(C) enhancement to Washington's co-conspirators, but that on the record those rulings could not serve as a basis for applying the enhancement to Defendant Washington. The court found that evidence presented at another trial may not simply be used to enhance defendant's sentence if the defendant objects.  If the defendant objects, the court held, he must be granted the opportunity to rebut the evidence or generally cast doubt upon its reliability.

Clearly, where the government seeks to enhance Schwarz's sentence based upon other courts' pronouncements, and where the government offers evidence from Schwarz's first trial where counsel was ineffective – the court must recognize that such government

offerings are insufficient and cannot be cured this late in the process.The government does not get to do it over and over. Enough indulgence has been given to the Government already and this evidence must be simply stricken because it is not reliable, relevant and the Government has failed in its burden.

Other government exhibits are entirely unintelligible. For example, two spreadsheets, D.E. 470-6 and D.E. 470-7, list numbers under a column delineated "orgn note", which perhaps, maybe, denotes the value of a loan at its inception. No loss is shown next to those loans. No facts are presented to prove (1) that the loan indeed was closed, (2) that Schwarz had something to do with that loan, (3) that the loan was foreclosed upon, (4) that a certain amount was recovered from a distressed sale of the asset in question. The government instead simply hopes to augment Schwarz's sentence to a life term on the basis of an excel file that proves nothing.

In other instances, within the government's purported evidence, the government at best exposes suspicious activity on the part of the banks, not on the part of Mr. Schwarz. For example, Fifth Third Bank appears to assert that it sold a home valued at $787,000 for $60,000, and another home valued at $892,000 for $55,000. D.E. 470-3. It is obvious that the bank was either not making good-faith efforts to sell

its assets - especially by accepting greater than 90% losses years after any financial collapse had shaken the real estate markets - or that the figures are false or wrong. The bank's numbers are not evidence of federal crimes – or at least, not of any crimes Mr. Schwarz perpetrated. They are not evidence of losses that can be explained by Mr. Schwarz's actions. The fact that Mr. Schwarz sent the cash to close one loan does not explain how a bank could take a 90% write-off on another loan. An explanation is necessary, and none has been given, much less by using reliable, credible, untainted proof of losses proven by a preponderance of evidence. It is the government's sole burden to present evidence justifying this unbelievable stretch of imagination, and to prove its incredible allegations by a preponderance of the evidence. *The defendant has no burden to present any evidence, make any showing, or win any argument unless the government meets its burden.*

Other exhibits the government proposes to ground its orders-of-magnitude sentence enhancement do not even purport to present meaningful data at all. They simply list letters of the alphabet next to random figures. D.E. 470-1. An excel spreadsheet of this kind cannot plausibly be said to constitute proof by preponderance of the evidence that Schwarz should spend the rest of his life in prison for being

somehow responsible for $179 million in losses. Such a spreadsheet is proof of nothing. A spreadsheet randomly generated by an automated large language model would be more intelligible and equally baseless.

The government must present *evidence* – not simply their own charts, or the charts of others that have no evidentiary value or reliability. Only after the government does this *for every piece of evidence* it wants to rely on, does the defendant have any duty to rebut it. Defendant Schwarz has no duty to rebut ramblings or compilations of meaningless figures.

The government's burden, at a minimum, was to have proven every single piece of evidence by a preponderance of the evidence. The government did not meet that burden. Nor should the government be given chance after chance to present their meaningless compilation of alleged facts. See *Washington,* 714 F.3d at 1363.

## II.   THE GOVERNMENT CANNOT CONVICT SCHWARZ, POST FACTO, USING A LOWER STANDARD OF PROOF THAN REQUIRED FOR CRIMINAL CHARGES, AND ON CHARGES NEVER INDICTED AND NEVER TRIED.

David Schwarz can only properly receive a sentence for conduct that can be proved to be more likely than not to have been an act or

omission within the scope of the criminal activity charged. Sentencing Guidelines § 1B13.(a)(1)(A), or more likely than not to have been part of the scheme or plan charged. Sentencing Guidelines § 1B1.3(a)(2).

The Government's theories purported to enhance Schwarz's liability fail. Schwarz was indicted for sending the cash to close a handful of loans. D.E. 2. The government, without justification, has elsewhere argued that he sent the cash to close seven, and at other times nine, and at other times fourteen loans. The government did not explain or argue to the jury the relevance of any other loans apart from a handful of loans for which Schwarz sent the cash to close. Schwarz has disputed the government's theory of what the HUD-1 contains. Yet even accepting the government's version *arguendo*, any related conduct enhancement to Schwarz's sentence must come from conduct associated with the actual alleged scheme: one to convince a bank to extend credit for a handful of loans by means of HUD-1 statements submitted after the banks had made their decision to extend credit.

The true scope of related conduct is narrow. Yet the government instead wishes to expand Schwarz's liability to thousands of other borrowers, each of whom had qualified for their own respective loans

without Schwarz's intervention or involvement in any way. The government, then, seeks to stretch the scope of Schwarz's liability to include thousands of loans for which there was not even an allegation of any action to deceive a bank on Schwarz's part.

To put it another way, each borrower established a relationship with their respective lender.  The bank agreed to loan money to the borrower for a mortgage based upon the borrowers' credit worthiness and appraisal of the property.  The borrowers' failure to meet their obligation to the bank has no relation to Mr. Schwarz.  The government has posited a loss number without creating the corresponding reason and connection to Mr. Schwarz; in doing so, the government has failed to meet its burden.

Had the government wished to charge Schwarz with whatever it is the government claims he did on the thousand other loans that were not charged, discussed, or shown to have any relevance to the transactions that were charged and on which the jury convicted, then the government should have done so. The government has not even attempted to show whether Schwarz had seen documents for the added loans, or that he had sent cash to close on those loans, or whether cash sent to close was the buyer's own, as was the case on several of the Coleman loans that the government tries to include in

the conspiracy. The government had the opportunity to show all those things when seeking his initial indictment. It did not. The government instead indicted bank fraud, because, as the Eleventh Circuit pointed out, the government had an impossible burden to prove that Schwarz defrauded homebuyers. *Schwarz v. United States*, 828 Fed. Appx. 628 (11th Cir. 2020). So, the government confined its case to bank fraud and now attempts to expand its case after the close of trial with purported evidence it never had presented and could not justify before a jury.

The government seeks to sneak through the backdoor charges it could not prove. The government intends to justify this violation of due process by relying upon tainted testimony from a trial (the first trial) in which Schwarz did not have effective assistance of counsel. Had the government attempted to prove that case at trial, it would have had to do so without the tainted evidence, and beyond a reasonable doubt. And had the government brought the evidence before a jury, as it was the government's duty if it had such a case (which it did not), Schwarz would then have had the opportunity to rebut the purported evidence while he still had available the experts and automation tools needed to search through the unreasonable pile of evidence in the government's discovery. He would have been

able to consider using the evidence previously found on appeal by Schwarz's counsel, evidence which the Eleventh Circuit mentioned undermined the government's now discredited theory.

Importantly, had the government announced the discredited theory was the case it intended to try, Mr. Schwarz would have had to be given substantially more time to go through the enormous discovery and find still more documents to defend himself. *Schwarz*, 828 Fed. Appx. at 636-37. Mr. Schwarz was given no such opportunity. He was instead granted the time to rebut the case the government had actually indicted. Had the government chosen to introduce this purported evidence during the trial, at least then they would have had to submit their unprovable fantasy to a jury and prove it beyond a reasonable doubt.

By seeking to introduce an entirely new case by using materials unrelated to the actual crimes that were indicted and tried, with unreliable, unsupported allegations, the government wants to force Mr. Schwarz to respond to a volume of information concerning which he has not had the opportunity to gather a defense, and which no law requires him to disprove. The proposed conduct for enhancing Mr. Schwarz's sentence cannot, as a matter of law, be used to

augment his sentence, because Mr. Schwarz was never given the opportunity to assemble a rebuttal of a phantom, unindicted case.

Because the government did not, and indeed cannot, prove that any action of Mr. Schwarz accounts for losses sustained on thousands of loans that were never discussed at trial, those loans cannot be used to amplify Schwarz's sentence. Mr. Schwarz was convicted of defrauding a bank by sending cash to close on a handful of loans. The government proposes to enhance Schwarz's sentence by adding a thousand other loans for which no evidence has been shown he made a misrepresentation to any bank. The government adduced no evidence at trial concerning these loans. The government can make no case for their relation to the conduct indicted, tried, and for which the jury convicted. Moreover, the government has not met its burden of demonstrating by a preponderance of the evidence that the bank, by virtue of the conduct convicted, actually lost a specific amount of money on loans that are utterly unrelated to the indicted and tried bank fraud. Charts without a modicum of reliability do not substitute for evidence, even by a preponderance of evidence standard.

Mr. Schwarz preserves his objection for later review that his constitutional rights to a jury of his peers (Sixth Amendment) and to

punishment fitting the alleged crime (Eight Amendment) have been violated by the government's intent to cause Schwarz to be sentenced for losses incurred in thousands of other transactions concerning which Mr. Schwarz's culpability was not decided by a jury beyond a reasonable doubt. Yet even on the loans which came up at trial, the government has not made an adequate showing.

The government had to prove – not suggest, not imply, not proffer, but prove by a preponderance of evidence – exact losses on every single loan alleged. The application notes to the sentencing guidelines Section 2B1.1 require that the loss be specifically reduced by the money returned, the fair market value of the property returned, and that the loss excludes interest of any kind, late fees, penalties, and other costs. The government must show detailed accountings to demonstrate these kinds of losses by a preponderance of the evidence on the loans that were the subject of the trial, instead of focusing on impermissible claims that violate the Defendant's due process rights, his right to trial by jury, and his right to avoid cruel and unusual punishment. The government should have concentrated on proving the losses on the loans that were actually shown to the jury.

If the government had met its burden and presented evidence concerning relevant conduct and losses, then the Defendant could rebut it. But the government failed. If the government had met its burden, then the Court had to make specific findings as to each loss – that means every one of the alleged relevant conduct allegations - and determine whether they were within the scope of relevant conduct. Only then can the Court make a finding on foreseeability. *United States v. Hunter*, 323 F.3d 1314, 1319-20 (11th Cir. 2003). But in this case, the government failed. Completely. Due process requires that the defendant be protected, and the government does not get to do it over.

## III.   THE GOVERNMENT'S ATTEMPT TO USE NONRELEVANT CONDUCT WHICH INCREASES THE SENTENCE FROM A FEW YEARS TO 40 YEARS IS CRUEL AND UNUSUAL AND VIOLATES THE EIGHTH AMENDMENT

The government is attempting to sentence Schwarz by ambush. The Court should prevent such an attempt. Schwarz notes that the government's intent to proffer an alleged $179 million in losses without demonstrating the factual basis, or reliability of the evidence, or scope of the evidence is not supported by law and results in violations of his constitutional rights, including his rights under the Eighth Amendment.

The government's irrelevant loss data augments Schwarz's potential sentence from a few years more in prison to a de facto life sentence. That sentence, based on unsubstantiated and irrelevant purported losses for a case the government wishes it could have brought but could not, is cruel and unusual punishment and violates the Eighth Amendment. See *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001 (1983).

## IV.  THE GOVERNMENT SEEKS TO ENHANCE SCHWARZ'S SENTENCE FOR A "LEADERSHIP" ROLE – U.S.S.G §3B1.1(a) - WITHOUT MEETING ITS BURDEN OF PROOF

The Guideline provides "If the defendant was an organizer or leader *of the criminal activity* that involves five or more participants or was otherwise extensive, increase by 4 levels" (emphasis added). The testimony at trial demonstrated Schwarz exercised no control, issued no orders or instructions to any member of the alleged conspiracy.  If anything, the evidence showed that Schwarz took instructions from Clark or attorneys to move funds.  No witness testified that Schwarz conceived any plan, drew in co-conspirators or made any independent decision or issued any order.  The "conspirators" identified at trial would be Clark, Priday, perhaps, Smith, and Schwarz.  The Application Notes (3.) states: "In assessing whether an organization is "otherwise extensive," all persons involved

during the course of the entire offense are to be considered.  Thus, a fraud that involved on three participants but used the unknowing services of many outsiders could be considered extensive."  The government's position misapprehends the guidelines.  Yes, Schwarz was a COO or CFO of Cay Clubs, but the scope of alleged criminal conduct was very narrow.  That is, a relatively few instances of bank fraud wherein Schwarz acted under the authority of Clark and provided a ministerial role.

The Eleventh Circuit in *United States v. Diaz-Rosado*, 615 F. Appx 569 (11th Cir. 2015) addressed the issue of leader or organizer of the conspiracy and when to apply the aggravated-role enhancement.  The Court noted that any contested fact relied upon in sentencing a defendant must be proved by a preponderance of the evidence which requires reliable and specific evidence. *Id.*, citing to *United States v. Bernardine*, 73 F.3d. 1078, 1080 (11th Cir. 1996).  In its examination of the applicability of the enhancement, the court required "evidence that the defendant exerted some control, influence, or decision-making authority over another participant in the criminal activity." quoting *United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009). Such is not the case here.

WHEREFORE, Defendant David Schwarz respectfully requests that the Court reject all of the government's proffered but unsubstantiated, unreliable, non-relevant conduct and focus on the conduct that is relevant to the charges tried. Such conduct totals at most $3.4 million. Mr. Schwarz requests that this Court hold the government responsible for proving all such losses by a preponderance of the evidence. The Court should deny the government's improper attempt to sneak in evidence that is not related to the charges presented at trial, and which would violate Schwarz's procedural and substantive due process rights if such evidence were considered. Defendant Schwarz asks the Court to require the government show that they have provided strict proof of the losses the government claims occurred, and strict proof that such losses were actually caused by the actual conduct reflected in the actual charges at trial.   Further, the government is obligated to establish by a preponderance that Schwarz was a leader or organizer of the criminal activity by showing that he exerted some control, influence, or decision-making authority over another participant in the criminal activity.

Respectfully submitted,

MICHAEL R. BAND, P.A.                    O'DONNELL CHRISTOPHER LLP

1224 Alfred I. DuPont Building
169 East Flagler Street
Miami, FL 33131
Tel: 305.372.8500
Fax: 305.372.8504
Email: michael@
bandlawfirm.com

/s/ *Michael R. Band*
MICHAEL R.  BAND
Florida Bar No. 228338

700 S. Royal Poinciana Blvd.
#705
Miami Springs, FL 33017
Tel: 305.640.8958
Email: sodonnell@
odonnellchristopher.com

/s/ *Sonia E. O'Donnell*
SONIA E. O'DONNELL
Florida Bar No. 250643

/s/ *Robert A. O'Donnell*
ROBERT A. O'DONNELL
Florida Bar No. 1011567

Counsel for Defendant David W. Schwarz

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of September 2023, a true and correct copy of the foregoing was furnished via the CM/ECF system to all parties designated to receive the electronic filings in this cause.

/s/ *Sonia E. O'Donnell*
SONIA E. O'DONNELL